UNITED STATES DISTRICT COURT

                     DISTRICT OF NEW HAMPSHIRE


Xzavier A. Randolph Fleming,
Selena S. Randolph, and
Qiayra M. Randolph,
     Plaintiff

     v.                                 Case No. 20-cv-911-SM
                                        Opinion No. 2020 DNH 199

Korde & Associates, P.C.,
Wilmington Savings Fund Society,
NewRez, LLC d/b/a Shellpoint Mortgage
Servicing, and Unknown Mortgage Creditor,
     Defendants


                            **O R D E R**


     This is yet another in a lengthy series of frivolous lawsuits (and bankruptcy filings) seeking to enjoin the foreclosure of a mortgage deed to property at 16 Front Street, Rochester, New Hampshire.  Like those before it, this action necessarily fails.

     Plaintiffs have, once again, sued the mortgage holder ("Wilmington"), as well as its servicing agent ("Shellpoint") and its legal counsel/foreclosure agent ("Korde").  They seek to enjoin the foreclosure sale (or, now that the foreclosure has occurred, set it aside).  And, for reasons that are not entirely

clear, plaintiffs move the court to compel defendants to conduct a judicial foreclosure of the mortgage – presumably because they believe they have some defenses.  They do not.[1]

All defendants have moved to dismiss.  For the reasons discussed, those motions are granted.

**Background**

Because plaintiffs – in particular the mortgagor, Selena Randolph – have already litigated these claims, the factual background to the parties' dispute has been discussed many times, by many courts.  See, e.g., John Doe 1-10 and Randolph v. Wilmington Savings Fund Society, FSB, 2020 DNH 91, 2020 WL 2813065 (D.N.H. May 29, 2020) ("Randolph I").  Those facts need

---

[1]   Plaintiffs explain that, "We have continually said the whole financial administration is **unconscionable and unworkable**. They cannot 'transfer' a servicing relationship, and all of it violates TILA, RESPA and FDCPA.  Under UCC 3-501, the 'holder' of any Note must present it 'at the place of payment.' Obviously this is impossible here.  If this were a judicial foreclosure case and the defendant was a plaintiff, the first objection would be that it failed to 'exhaust a plain remedy': go cash the Note, go collect complete payment due in exchange for the bill, which is then left in original with the maker in their own possession, to be destroyed and thereby cancelled out of circulation.  This is the ordinary use of 'negotiable instruments,' but it never happens in these cases, will not happen here, and cannot happen at all."  Plaintiffs' Opposition Memorandum (document no. 13) at 1-2 (emphasis in original).

2

not be recounted in detail. It is sufficient to note the following.

In April of 2007, Randolph executed a promissory note in the principal amount of $314,400. She secured her obligations under that note by conveying a mortgage deed to property located at 16 Front Street, Rochester, New Hampshire. The mortgagee was Mortgage Electronic System, Inc., as nominee for the lender. Subsequently, Wilmington, as Trustee for BCAT 2017-19TT, was assigned that mortgage and became the holder of Randolph's note.

Randolph defaulted on the note several years ago and owes more than $120,000 on that debt.[2] Since her default, Randolph has employed a number of questionable and meritless tactics to avoid foreclosure, including the filing of at least eight bankruptcy proceedings (seven in New Hampshire and one in Massachusetts), and what might well have been a fraudulent transfer of the property - on the eve of one scheduled foreclosure - to her mother, Qiayra (who immediately filed a bankruptcy petition). Bankruptcy courts in both New Hampshire

---

[2] In 2013, Randolph was in default and she was permitted to modify the terms of her original loan. At the time, the outstanding balance exceeded $500,000. As part of that modification, more than $430,000.00 in debt was forgiven, and Randolph's new principal balance was reduced to $74,290.00. She defaulted on that Loan Modification Agreement as well.

3

and Massachusetts have barred Randolph (and her mother), in varying degrees, from filing any bankruptcy petitions related to, or scheduling, the property.

In <u>Randoph I</u>, this court summarized the pertinent (pre-foreclosure) facts as follows:

> So, looking beyond the arguably fraudulent transfer, and the numerous abusive bankruptcy filings, and the state court lawsuit, the relevant facts related to the property at 16 Front Street are currently as follows:
>
> 1. Randolph's mother (not Randolph) currently holds title to the property, subject to Wilmington's mortgage deed;
>
> 2. The note secured by that mortgage deed is in default, Wilmington's right to foreclose has been (repeatedly) established, and the bankruptcy court has (repeatedly) granted Wilmington relief from the automatic stay to pursue its contractual and statutory right to foreclose the mortgage deed; and
>
> 3. The bankruptcy court has barred Randolph from filing <u>any</u> bankruptcy petitions until late 2020, and provided that, for a period of two years, the automatic stay provisions of the bankruptcy code shall not apply to the property or serve to bar or delay Wilmington's foreclosure efforts with respect to that property.

<u>Randolph I</u>, 2020 WL 2813065 at *2. In that case, Randolph sought, <u>inter alia</u>, an order declaring her ownership of the property, free of any encumbrances (based upon adverse possession), as well as an order enjoining a pending foreclosure

4

sale. She was denied all relief, judgment was entered, and the case was closed. On September 2, 2020, Wilmington conducted a "power of sale" foreclosure, foreclosed the mortgage deed, and sold the property to a third party.

In their complaint (document no. 1-1) and amended complaint (document no. 10), plaintiffs advance a variety of claims, including assertions that the promissory note had already been paid (it had not), the mortgage "expired" and, therefore, the foreclosure sale was time-barred (it was not), and the notice of foreclosure was defective (it was not). Nearly all of plaintiffs' claims have been litigated before and resolved against the mortgagor, Randolph. They are, then, barred by principles of res judicata. Those that have not been addressed previously, or are not otherwise barred, are meritless.

The only arguably viable and novel claim is the assertion that the foreclosure sale was defective. According to plaintiffs, the notice of sale falsely identifies Wilmington as mortgagee, the notice of sale failed to advertise the place of sale, and the "sale procedure is unconscionable." Amended Complaint (document no. 10) at 1-2. Plaintiffs also challenge Wilmington's use of a foreclosure agent (defendant Korde), which they say was engaged in the unauthorized practice of law. And,

5

finally, plaintiffs assert that Wilmington is merely an illegal, "nominal stand-in" for the true mortgagee. Consequently, say plaintiffs, Wilmington lacked legal authority to foreclose the mortgage. Id. at 4.

Each of those allegations is frivolous and conclusory. Most are demonstrably false. None states a viable claim for relief. See generally SEC v. Tambone, 597 F.3d 436, 441, 442 (1st Cir. 2010) ("If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."). See also Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012).

Both the mortgage and the notice of sale are attached to plaintiffs' complaint. See Legal Notice of Mortgagee's Sale of Real Estate (document no. 1-1) at 13-15; Mortgage (document no. 1-2). Looking beyond plaintiffs' vague and occasionally fanciful claims, there is no indication that the notice of sale failed to comply with New Hampshire law. See generally N.H. Rev. Stat. Ann. 479:25 (establishing the requirements of a "power of sale" foreclosure). As required, that notice was published for three successive weeks in a newspaper of general circulation and it contained the elements and disclosures

specified by New Hampshire law.  <u>See</u> Sale Publication Notices (document no. 9-14) at 2-4.  Plaintiffs' asserted "defects" in the foreclosure sale are, then, contradicted by the very documents attached to their complaint and those of public record.

None of the claims asserted in plaintiffs' original complaint or their amended complaint states a viable cause of action.  Defendants are, then, entitled to dismissal of all claims asserted against them.

## Conclusion

These pro se plaintiffs – in particular, Selena Randolph – have engaged in an unrelenting, multi-year, and frivolous course of litigation aimed at thwarting Wilmington's lawful right to foreclose the mortgage deed securing Randolph's long-defaulted obligations to repay her mortgage loan.  Wilmington's right to foreclose the mortgage has been litigated – and affirmed – before.  Indeed, in September of 2020, Wilmington conducted a public foreclosure sale and sold the property to a third party. Consequently, plaintiffs' efforts to enjoin that foreclosure are moot.  Their other various assaults on the validity of the mortgage and propriety of the foreclosure sale are entirely without merit.  Plaintiffs are put on notice that similar future

conduct will likely result in sanctions, including payment of defendants' reasonable attorney's fees and costs.

For the foregoing reasons, as well as those set forth in defendants' legal memoranda, Korde & Associates' Supplemental Motion to Dismiss (**document no. 11**) and Wilmington Savings Fund Society's Supplemental Motion to Dismiss (**document no. 12**) are **granted**.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 17, 2020

cc: Xzavier A. Randolph Fleming, pro se
    Selena S. Randolph, pro se
    Qiayra M. Randolph, pro se
    Susan W. Cody, Esq.
    Tracy A. Kish, Esq.
    Thomas J. Pappas, Esq.